and Attorney Maranzini. We're going to go on the record, so please introduce yourself to begin. Good morning. May it please the court. Assistant Federal Public Defender Ellie Maranzini on behalf of Appellant Saeed Texeira-Nieves. Judge Lynch, may I please reserve two minutes for rebuttal? Yes, you may. Thank you. This is an appeal from a denial of a compassionate release motion that was filed by a young man in his mid-20s who suffers from sickle cell disease and thalassemia. He has a life expectancy in his mid-40s. His health conditions place him in a distinct risk of severe or fatal illness should he contract COVID-19. Counsel, the government notified us by a 28-J letter that your client has now been fully vaccinated. Is that so? Yes, your honor. Thankfully, he was able to be vaccinated this past May, I believe. Thank you. During his sentence alone in the past two years, his health has declined. He is currently confined to a wheelchair because of the deterioration and debilitating... Counsel, I'm sorry, but he has now been fully vaccinated. Therefore, how can the discretion? In this particular case, vaccination does not change the fact that Mr. Texeira can present extraordinary and compelling reasons. It would be inappropriate to hold as a matter of law that the vaccine would eliminate his risks when so much is still unknown by the scientific and public health community. I'm sorry, but you know, two circuits apparently have now disagreed with that contention. I don't know whether they have a per se rule or whether they say it increases the burden on the defendant. As a practical matter, it would seem to increase the burden on the defendant. I mean, it's a pretty high burden as it is abuse of discretion. But, you know, in terms of the underlying facts, merely that he still is at some slight risk doesn't seem to do it. Your Honor, with regards to this particular case, we would urge the court not to hold that the vaccine eliminates extraordinary and compelling. Mr. Saeed's particular conditions cause him to recommend social distancing and other safety measures for vaccinated, immunocompromised individuals. Furthermore... Don't you have a problem above and beyond extraordinary and compelling reasons? Judge Bososa's order, as I read it, also finds that the balance of the 3553A factors weighs against compassionate release in this case. And if that's so, that's an independently sufficient reason for denying compassionate release, is it not? That would be an independently sufficient reason. But, Your Honor, the judge's order does not, in fact, engage in a 3553A analysis. Well, I think he cites 3553A. He cites it. His order is four sentences long. His order is cryptic, but he cites it. And I'm just suggesting to you that if his order is read, as I think it can be read, to include a section 3553A finding, then the whole question of extraordinary and compelling reason goes away. It would be an independent basis for denial, but, Your Honor, it's important to note that the Additionally, he is still a danger to the community, which cites 3582C1A, 3553A, and then the policy statement under the guidelines. Yes, because his dangerousness to the community is certainly a factor in the 3553A analysis, isn't it? Yes, it's absolutely an appropriate consideration under 3553A, but I think the way that the order reads, and the fact that the order prior to that explicitly adopts the reasons offered by the government, I think makes clear that the district court's order was both keyed to the guideline policy statement and constraining its discretion, and also based on an incident. The government had argued to the district court that 3553A balance was against the defendant. That was one of the reasons that the government proffered to the district court. Yes, but the government's argument regarding 3553A was conclusory in that it stated, Conclusoriness like beauty is often in the eye of the beholder. The fact of the matter is the government argued it. The district court said that it was adopting the reasons proffered by the government. It cited the 3553A, and I'm struggling with the notion of why that shouldn't be read as meaning that the district court intended to tell counsel in the case and also on appeal that 3553A was an independently sufficient ground for denying this petition. I think there are a couple of issues with the order in that regard. First is that the government's arguments, even if we were to infer that the court adopted them wholesale, were both flawed and conclusory as it pertains to 3553A. There was a part of the government's opposition below that claimed that Mr. Dixada did not identify a CDC recognized risk factor, which was false, and there was a part of the government's brief that was arguing about hypertension, which is not a condition that Mr. Dixada... Counsel, I'm sorry, I don't understand why you think that's important. You were put on notice, or whoever was counsel at the time, it may not have been you, that the government was relying not merely on the sentencing commission statement, but on 3553A. Did you file something, you generically, in the district court saying, no, he was not a threat to the community, and no, the other 3553A factors do not weigh against the defendant? Yes, we did. We raised those arguments in our initial motion, as well as in a reply after that. And therefore, the district court had a full set of arguments in front of it on this 3553A issue, and yet you want us to read the order which expressly refers to 3553A as having ignored that whole issue. Why would we do that? I think there's two ways that the court can rule for Mr. Dixada in this way. First, is that the court's order, though it mentions 3553A, does not give any individualized consideration to the arguments raised by Mr. Dixada, or to his particular circumstances as they existed at the time. Are you arguing for a rule that the district court judges, very busy and burdened in many ways with a number of these compassionate release motions, must write full-blown opinions addressing every argument that defendants are making? No, Your Honor. But as the Sixth Circuit recently expressed in Jones, that court said, we require judges to write more extensively in the compassionate release context where the record bears little indication that the district court considered all the defendants' evidence and arguments before granting... I'm sorry, the Sixth Circuit, you say, has adopted a rule that more than in any other criminal issue where it's compassionate release, the district courts are under a greater burden to write? If so, why would the First Circuit adopt such a rule? It hasn't adopted a new rule, Your Honor, and I don't think the First Circuit needs to adopt a new rule. I think under the First Circuit's existing precedent, and as recently expressed in Secocia, it's clear that the district court's explanation in this case falls short of what would be required to adequately review the case on appeal. In Secocia, for example... Excuse me. Are you saying that a district court, which, like this district court, refers primarily to an adoption of the grounds and reasons given in the government's briefing and pleadings, are you saying that there should be a per se rule that that sort of shorthand reference is not permissible to a district court on a compassionate release motion? No, Your Honor, but where... It depends on the circumstances. That's right. It depends, does it not, on how complicated the issues are, whether or not the party's briefing on both sides tees them up for decision, and whether we can look at the decision, at the briefing in the district court, at the district court record, and say, oh yeah, this is what the district judge had in mind. The burden of explanation has got to depend on the context of each specific case, doesn't it? Absolutely, Your Honor, and I think in this an adoption of the government's arguments. The first is that the government's arguments were keyed to the policy statement. But, you know, you keep referring to the policy statement. As I read the record, there was never an objection to the policy statement. The policy statement argument that you're making to us was not made to the district court. Your Honor, that's right. The policy statement argument was not explicitly argued. It wasn't argued explicitly or implicitly. It plain wasn't argued, so that if we would reach that issue, we would have to reach it on plain error review. Your Honor, I do believe that the issue was implicitly argued below, in that Mr. Tixeda's request for relief was broad, and we cited at least one decision. Counsel, please, you're in the First Circuit. Implicitly doesn't do it. We understand, Your Honor, but under plain error review, Mr. Tixeda would still prevail, because the plainness of the error in this case. If I may just conclude this final thought, Your Honor. Yeah, please go ahead. The plainness of the error in this situation is based on the clarity of a statute as opposed to binding precedent, and the plainness of the error would be assessed at the time of appellate review and as we stand today. At least eight circuits that have addressed the issue agree that the error exists, and four of the five districts in this circuit have held that the policy statement doesn't apply, and so Puerto Rico is one of the districts that would require guidance from this court in terms of how to address these motions for compassionate release. Okay, thank you. Thank you, Attorney Maranzini. Please mute your audio and video at this time. Attorney Klumper, please unmute and introduce yourself to begin. May it please the court, Thomas Klumper on behalf of the United States. It's the government's position that this court should affirm the district court's decision. There was no abuse of discretion, I think basically on two factors. One, as the court indicated, we had argued in our brief, he's been vaccinated, has antibodies, citing Broadfield, and recently, we just submitted Lemons, which is a six-circuit decision that also goes along with the idea that with antibodies, there's a lesser, not as heightened risk for COVID in this case. Two, we have to look as what this court has also indicated. Yes. Excuse me, sir. Did those cases involve someone who was immunocompromised to the extent that Mr. Teixeira-Nieves is with sickle cell disease? They weren't related to sickle cell. One, if I recall, Lemons dealt with hypertension, heart issues, and another one, Broadfield, also dealt again with, if I recall, hypertension and another condition. But still, he still has conditions. These defendants had conditions, and it does help him. And if you look, he's even in a medical facility at this time. He has been making even more. If he has, does have issues, he is in the Springfield Medical Facility, which the defendant, in his brief, has indicated. Now, if I may, addressing under the 3553A factors, this court, first of all, the court adopted, or actually, for the reason indicated by the United States, and it's actually opposition, and it's a reply. So, the court basically adopted the government's position. If you look at page 134 of the appendix, what did the government argue that under 3553A factors, it included the defendant regarding danger to the community, or to other persons in the community. And what does it cite to? The offenses that he pled guilty to, counts one and two, which involved a firearm and drugs. And two, it also indicated what he was sentenced to. Now, this is the judge who actually sentenced him, first of all. And secondly, when this defendant was convicted, or actually sentenced, it was only approximately a year before, a year and a half, a year and several months, before he asked for compassionate release. So, here, the judge would know this case, should know the case very well. And in addition, I mean, the period had not passed. He doesn't even ask, cite any, never argued once, anything regarding rehabilitation or anything. So, what does the court indicate? Additionally, he is still a danger to the community. And that's why we believe the court did not abuse his discretion under 3553A factors in determining that he still was a danger to the community. Mr. Klumper, you know, we have a fair amount of discretion as to how we write our decisions. And the suggestion has just been made that the District of Puerto Rico, in particular, would benefit by knowing our court views on the issue of the sentencing commission policy statement. Does the government have a position on that? I don't think this court needs to decide that at this time. The reason why I say it, one, first of all, I had argued waiver because he did not raise even in his initial brief, but in the reply brief, the plain error standard. So, I think we have that issue of maybe even waiver in this case, first of all, because he waited until the reply brief to even argue this plain error standard. They totally ignored it in their initial brief, ignored it down below. So, secondly, I think you don't have to go, because even if we do assume using plain error standard, where's the prejudice? You have to look, the 3553A factors were used. Mr. Klumper, you kind of missed my question, which is not, do you have independent grounds for affirmance? You've stated those quite well. The question is one of guidance from our court to the district courts, and it appears that the district judges are concerned about this issue. They're on the front lines. And so, is there some benefit to us delaying like further law will develop or like the sentencing commission is itself about to review this whole issue? And does the government have a position? I think you still don't, the court can still handle it here. The district court has seen what is happening here other than the 11th circuit. Secondly, I think if you look at it, I'm not aware at this point what the sentencing commission is going to do. They're still down to two only. My understanding is I've not heard anything in policy-wise or anything, whether some, because they need a minimum of four. Normally they have seven. So, right now, are there any nominees? I do not know, Your Honor, at this time. I do not know that question. But I still think, I mean, here when a lot of these decisions were made or rendered, this is when COVID was still new. So, that is why, and also some of the decisions were being handed down. Now there's more decisions and the court, I think I've not seen so many compassionate releases coming through, but maybe at this point, I would say no. This court can defer it and still on Secocia rely on the factors that it relied on the 3553A factors. Let me ask you a question. Yes, Your Honor. Attorney Klumper, are there any cases that you can give us where a district court judge learned that a defendant had sickle cell disease, not a sickle cell trait, but the disease? And within the COVID-19 context, is there a case where a court did not find that that was extraordinary and compelling, even under the policy statement? Under the policy, not that I know of. District courts across the country have looked at the policy statement, frankly, in the context of medical issues, like a person with sickle cell disease. I'm not talking about the issue I saw and confronted in fields, which is a totally separate question, but with a medical issue, the policy statement itself, even if the judge thinks it applies, the policy statement certainly gives a judge a basis on which to find extraordinary and compelling circumstances, just the catch-all phrase in the policy statement. And most judges across the country were relying on that. Clearly in Puerto Rico, they did not. So why isn't it just an abuse of discretion? If the judge thought the policy statement guided him, then not applying it in this instance, why isn't that an abuse of discretion? Well, Your Honor, if you look, I cited two cases. There were two cases where they had sickle cell. It wasn't trade. They had sickle cell, and the court still determined that it wasn't extraordinary and compelling reasons. So, I mean, I do cite a couple of cases that were district court decisions. If you look at it, the name begins with M. Sorry, Your Honor. So you cited two cases with sickle cell disease in COVID-19? Okay. Yes, I did. If you look at the brief, I did cite two cases where it was sickle cell on point where they did decide not to grant the defendant release pending, you know, a compassionate release in this case. Mr. Klumperer, I don't know the science, but isn't sickle cell disease a species of diseases that results in compromised immune systems, but there are a large number of other conditions that also lead to immunocompromisation? Yes. Are you meaning besides sickle cell? Oh, yeah, yeah, yeah. Yes, there is. There can be actually, I have no spleen right now because of a cancer surgery, so I'm immune compromised. So, I do have to be careful. I have the shot, just like the defendant. And, I mean, you do have to be careful in that aspect. But, I mean, it's all a matter of, like, they have imposed policies. Look at BOP. If you look right now, the facility had zero. When we filed the brief, they've had only one. So, they are taking care of the individuals, trying to avoid having them obtain or get contact with COVID and everything. So, they are doing this job, BOP, and that's why another reason I think it doesn't, at this point, as extraordinary and of cancer who are undergoing treatments which compromise their immune system, whether radiation or medication, is a much larger group in this country than those who suffer from sickle cell disease. That is correct. And, if you look at it, I mean, in this case, they would be immunized, compromised, if you have chemotherapy. And, I mean, that's what I'm saying. The BOP and the policy is time. Okay. Can I ask one other question, Judge? Yes, certainly. In your brief before this court, you argue, Attorney Klumper, that the government argued and the district court agreed that Texiera failed to adequately support that he had sickle cell disease condition. You argued before the district court, and that's important because the district court adopts your reasoning, that he did not provide sufficient documentation or evidence that he suffered from this disease. The PSR itself, the PSR, in multiple places, talks about his history of sickle cell disease and the multiple hospitalizations that had happened even recently before his arrest. And so, by relying entirely on your brief, isn't the government wrong on that? And isn't the district court just wrong on this finding? Well, Your Honor, if you look at the PSR, it is not clear. One thing, it did state he had sickle cell, but, I mean, the judge is not a So, back then, this is, we're talking 2018, and then not sure if sickle cell, if there's a regression or not, or if anything like that. Secondly, if you look at the hospitalization aspect, and I clarified that in the brief, is that what happened was, yes, he had been two times before dealing with it, but then hospitalizations appear, if you look at it, based on because of the hip issues that he had. In multiple hospitalizations... No, no, no. Just a lays out his history of sickle cell. In the case before the district judge, he actually attached a declaration from a doctor talking about sickle cell, his sickle cell diagnosis and the effect. In paragraph 49 of the PSR, and this is what, I mean, I'm a district judge, I'm not a doctor, as you say, so I rely on the PSR for this kind of information. It says, according to the hospital in Ponce, Puerto Rico, since 2014, the defendant has been hospitalized more than 25 times and several other times at other hospitals for sickle cell disease. There was just no question he had sickle cell disease. And so, for the government to pursue that argument and even pursue it on appeal before us to suggest there's no evidence is just flat wrong, based on the record. And if you're a district court judge and not a scientist, you rely on the CDC. The CDC recognized sickle cell as having two times the mortality rate. Your Honor, if I could address that question. As for you said he attached an affidavit, are you regarding attached to the brief or? It was a declaration. It was a declaration from Dr. Shah. Okay. That wasn't even, that one was a general declaration discussing. It was not, if you read it, it was not actually, his name is not indicated that doctor never saw him. It was just a general declaration that was submitted by the defendant in that case from a doctor that never met the person. Let me just read from one line of it. This is Dr. Shah. Most cases, defendants don't really have this kind of evidence. A doctor who's telling the district judge, judge, here's what we say, quote, preliminary data already reveals that the COVID-19 mortality rate for those with sickle cell disease is more than twice that of the general population. So he knows he's got sickle cell disease. That is undisputed based on the pre-sentence report. And he learns from a doctor that sickle cell disease is more than twice the mortality. So how is your assertion in the brief before this court as well as before the district court that the district court wholly relied on? How is that not inaccurate? Well, in our argument, what we did was when he had submitted some records that were from 2018 at the moment. And therefore, he relied on that. And what it said was PMHXS. Well, actually, the 2018 record dealt with that. He didn't submit current records. That was the first thing, if you look in the first reply. And the second one, what he did was a number of the documentation that he submitted were also past historical. It said in the past PMXH, past medical history, it talked about sickle cell. Now, there is, I agree, on page 107, indication that he has sickle cell on 107 of the appendix. So, I mean, based on that, it appears he does have sickle cell. And it is current. But you have to look at he's taking medication. Everything they have done, they have done to assist him. They've given him the medications and everything else. So he appears stable. When you look at all the records, it appears stable. Yes, he may have had hip issues. And that's why he was in the hospital at this time. Or even back then, he had pain, hip pain. And that's why he had a number of times he was in the hospital, because he had to go through surgery for the hip. Your Honor. If there are no further questions, that will conclude your argument. Thank you, Your Honor. We rest our embrace. Thank you. Thank you. At this time, Attorney Klumper, please mute your audio and video. Attorney Maranzini, you have a two-minute rebuttal. Please begin by introducing yourself. Thank you. Ellie Maranzini on behalf of Appellant Texada Nieves. I just wanted to briefly answer a couple of Your Honor's questions from the prior argument. In the Lemons case, the petitioner suffered from hypothyroidism and Broadfield suffered from asthma, neither of which are CDC-recognized risk conditions, nor are they immune-compromising conditions. Mr. Texada's condition specifically impacts his spleen function, which is the organ responsible for producing antibodies. And he's also, though he's in a medical facility, he's currently housed in a cell with seven other people. He is in a medical facility. He was identified for an operation over a year ago. That operation still has not taken place. He has been hospitalized over four times since his sentence began in this case and has had to blood transfusion in the past several months. I wanted to take a moment to distinguish the district court's order from other orders in compassionate release cases, and particularly from the Secocia case in which this court found that the district court had sufficiently reasoned. In this case, by contrast, the district court did not articulate specific reasons, refer to the record, or account for specific arguments. These conclusory statements are insufficient to warrant appellate review. And as the Sixth Circuit described in Jones, unless there is evidence that the district court referred to the record, a district court should not issue single sentence or otherwise exceedingly slim compassionate release decisions or just cite the 1B1.13 policy statement or 3553A factors without any analysis of their requirements. The district court in this case found first that there was no or counsel, excuse me, I thought there was a reference to the fact that were he released, he would be a danger to the community. Is that correct? Yes, your honor. And my reading of that reference was that it relates to the policy statements requirement. It doesn't matter. You just said they give no reasons whatsoever, but that's not true here. Well, he does mention the danger to the community, but he comments that he is still a danger to the community, which indicates that the court was considering Mr. Tixedo's situation as it was at the time of sentencing. On the contrary, still, the danger I found earlier continues. That shows a present assessment of the facts. And he follows it with a citation of 3553A. All right. Do you have anything else? Yes, your honor. Yes, I just wanted to also mention that on page 25 of our brief, we cited the same sickle cell decisions granting release that we had provided to the district court and just emphasize that if this individual's conditions didn't amount to extraordinary and compelling in this framework. So can I ask a question then? The government just said every record that was put before the district court was, what, two years old at the time? And the declaration of the doctor was not based on a personal examination, but was based on a review of two-year-old records. Is that accurate? Not exactly. Mr. Tixedo provided four types of documents. First, he provided 2018 records from his community doctors, which were diagnosis and treatment. Second, he provided BOP records, which indicated that in BOP, he continued to be diagnosed with sickle cell disease and treated, and also indicated that he had had to be hospitalized and undergo blood transfusions while he was sentenced. And then the declaration that is mentioned was a declaration that described what are the specific aspects of sickle cell disease that make one particularly vulnerable to COVID-19. That was not a doctor that had specifically evaluated Mr. Tixedo. I'm sorry. It's still referred. The government has suggested that whatever the state two years before, he did not put on evidence. You say it's untrue. There was evidence from the Bureau of Prisons that he was not in better shape than he had been two years earlier. But it comes down to your reliance on the Bureau of Prison Records and the fact of hospitalization, although the government says that was for hip problems. Well, we're relying on the BOP records show that not only did he continue to suffer from sickle cell disease, which is not a condition that goes away unless you receive a very rare bone marrow transplant, but that his health had actually declined and been declining during the time period around when his motion was pending. And those records were not just BOP medical records. They also included records from his hospitalization offsite at a hospital in Florida and from those doctors that were treating him there. I'm just trying to understand. So it was just represented to us that BOP is giving him treatment for the sickle cell disease. He's giving him the available treatment, and you have represented to us that that may be true, but it does not result in any lessening of the disease. Is that in evidence in this case? I don't... We don't have a record that explicitly says that his... Yes, it's in the record in that the records demonstrate that his condition is worsening and that he will continue to require treatment, including blood transfusions and an operation, which he has not yet received, and that he will require regular medication, which he does receive. Which he has been receiving throughout, correct? Yes, your honor. Okay, so it's a sort of maintenance. Okay, that answers my questions. Do you have a further point you can make in 30 seconds? Sure. We would just urge the court to first rule that the policy statement does not constrain a court's discretion when considering extraordinary and compelling reasons and vacate the district court's order and remand for an order directing that he be granted compassionate release as soon as possible, since this is not a case where we have the luxury of time. Thank you, your honor. How do you know, attorney Marazzini, that the judge felt constrained? How is it you know that? For two reasons. First, because the judge adopted the district court... I'm sorry, the government's And two, because his order is keyed to the policy statement and that it first mentions extraordinary and compelling reasons, second mentions a danger to the community, and 3553A. So even though the order is brief, it seems keyed to the policy statement. Because of the order of analysis? Because he mentions the 3553A argument second? That shows I meant that he cited the policy statement explicitly. He cited at the end of his third sentence... Okay, thank you. We have the argument. Okay, thank you. Thank you. At this time, would counsel Marazzini and attorney Klumper please mute their devices and they can actually leave the hearing?